UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| WILLIAM MERRITT, | ) | |
| | ) | Case No. 1:05-CV-00586 |
| Plaintiff, | ) | |
| | ) | Judge Ann Aldrich |
| v. | ) | |
| | ) | |
| FIRSTENERGY CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | MEMORANDUM AND ORDER |
| | ) | |
| | ) | |

Before the court is defendant FirstEnergy Corporation's ("FirstEnergy") motion for summary judgment [Docket No. 40]. In a March 31, 2006, memorandum and order [Docket No. 24], the court granted summary judgment to FirstEnergy on all claims by plaintiff William Merritt ("Merritt"), except for Merritt's claims under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, for FirstEnergy's termination of Merritt as part of a reduction-in-force ("RIF"). For the following reasons, the court grants in part and denies in part FirstEnergy's motion and enters judgment as a matter of law for FirstEnergy on Merritt's failure-to-promote claim.

**I.     Background**

Merritt was employed by Cleveland Electric Illuminating Company ("CEI") in numerous positions over the course of over twenty years, including many years of experience as a claims investigator for CEI. CEI was a wholly owned subsidiary of Centerior Electric Corporation ("Centerior"), which merged with Ohio Edison Company ("Ohio Edison") in 1997 to form FirstEnergy. Reorganization and integration of the two companies into FirstEnergy began after the formal merger. Prior to completion of reorganization, the manager of the claims department for Centerior/CEI resigned,

and David Karafa ("Karafa") was appointed claims manager, even though Karafa had minimal experience with claims handling. The reorganization eventually included a reduction-in-force ("RIF") in January 1998 which eliminated certain administrative and other salaried positions that would become duplicative in FirstEnergy and resulted in Merritt's termination. At the time of his termination, Merritt was a claims investigator in a department containing one manager, one supervisor and six claims investigators pre-reorganization. As Ohio Edison was the driving force behind the merger, the RIF modeled post-reorganization departments after those in Ohio Edison. Merritt's department would be left with one manager and two claims investigators, meaning that Merritt was competing against the other five claims investigators for the two remaining positions.

Prior to the merger, in 1997, Bradley Ewing ("Ewing") assumed responsibility over Ohio Edison's claims department for several months when Mark Julian ("Julian"), the director of that department, went to work on the team tasked with integrating Ohio Edison and Centerior/CEI. After the merger, Ewing became director of operation services for Centerior/CEI's old service area, known as the Northern Region. Seven managers reported to him, including the manager for claims. When Ewing first assumed his new, post-reorganization position, William Riedthaler ("Riedthaler") was claims manager. Riedthaler had performed similar duties for Centerior/CEI, overseeing six claims investigators, including Merritt. Riedthaler eventually decided to resign, and Karafa ultimately became claims manager under Ewing.

Karafa had worked for Julian on the merger integration team, but had no direct experience dealing with claims. Ewing selected Karafa for the claims manager position after Riedthaler resigned, without having worked with Karafa directly, and did not recall considering any other individuals for the claims manager position. The position was not posted as "open" for other Centerior/CEI or Ohio Edison

employees. According to Ewing, Karafa was selected primarily on the strength of Julian's recommendation, because Karafa knew the business and was most likely to aid integration of the former Centerior/CEI department post-reorganization in the ways desired by upper management, given his experience with the merger integration team. Centerior/CEI and Ohio Edison had differing methods for dealing with and processing claims. At the time he was appointed claims manager, Karafa was 35.

According to Ewing, a large meeting of directors and managers led to the selection of the two claims investigators who were to be retained post-reorganization: William Collins ("Collins") and Donna Chapes ("Chapes"). That meeting was held, and Collins and Chapes selected over Merritt and the others, while Riedthaler was still claims manager, according to Ewing. Ewing then stated that once Karafa became claims manager, he had the opportunity to review those selections, but any decision on Karafa's part would be heavily influenced by the discussion at the previous meeting of directors and managers.

Karafa's recollection is somewhat different. He had never met or worked with any of the six claims investigators before being made claims manager in January 1998. After he became claims manager, Karafa claimed that Ewing left selection of the two claims investigators to be retained up to him. Karafa then reviewed the six claims investigators' internal records and spoke with each of them. Karafa never spoke with his predecessor Riedthaler about which two claims investigators should be retained, and based his decision principally on the priorities he brought concerning the reorganization and the conversations with the claims investigators in the brief period of time between his appointment and the RIF termination decisions were made. Karafa's priorities, according to him, included his interaction with the employees, the customer/supervisor ratings, and the processing of claims which, to that point, included a large backlog according to Karafa. Karafa selected Collins and Chapes over

-3-

Merritt primarily due to the fact that Karafa interacted better – was able to get along better with – Collins and Chapes.

The two individuals selected were, in January 1998, also over forty years old, placing them within ADEA's protected class. Merritt was 53, while Collins was 45 and Chapes was 49 at the time of the RIF. The other two individuals terminated as part of the RIF along with Merritt were six and seven years younger than Merritt, respectively. In opposition to FirstEnergy's motion for summary judgment, Merritt has produced evidence indicating that, for over a year before the RIF, his workload in terms of claims handled was roughly equal to that of Collins and substantially exceeded Chapes, and he had far fewer claims open for more than 90 days than Collins. Merritt contends that these facts – that his workload met or exceeded the two individuals retained, and that his ability to handle claims in a timely fashion was superior to the individual retained who had a similar workload – rebut any claim by FirstEnergy that Collins and Chapes were better qualified to serve as claims investigators than Merritt.

Under these facts, Merritt presses two claims under the ADEA. First, he claims that the failure to promote Merritt to claims manager, and the appointment of Karafa to that position instead, constituted discrimination on the basis of age. Second, Merritt claims that retaining Chapes and Collins while terminating him as part of the RIF constituted discrimination on the basis of age. Both claims are properly before the court on summary judgment.[1]

## II. Discussion

Summary judgment is appropriate if "there is no genuine issue as to any material fact and that

---

[1] Although FirstEnergy did not raise or discuss the first of Merritt's claims at all, Merritt raised that claim in his response brief, giving FirstEnergy the opportunity to address the merits of that claim in its reply brief. *United States v. Campbell*, 279 F.3d 392, 401 (6th Cir. 2002) (holding that while a party "cannot raise new issues in a reply brief," that party "can . . . respond to arguments raised for the first time in [the response] brief") (citation omitted).

-4-

the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323-25 (1986); *Hedrick v. W. Reserve Care Sys.*, 355 F.3d 444, 451 (6th Cir. 2004). If the movant succeeds, the burden then shifts to the nonmoving party to demonstrate the existence of a material dispute as provided in Rule 56(e):

> An adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986). Parties opposing summary judgment must go beyond the pleadings and produce some type of evidentiary material in support of their position. *See Celotex,* 477 U.S. at 324.

In determining whether a genuine issue of material fact exists, this Court must view the evidence in a light most favorable to the nonmoving party. *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157 (1970); *Hamby v. Neel*, 368 F.3d 549, 556 (6th Cir. 2004); *Williams v. Int'l Paper Co.*, 227 F.3d 706, 710 (6th Cir. 2000). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson,* 477 U.S. at 248. An issue is "genuine" if the evidence is such that a reasonable juror "could find by a preponderance of the evidence that the [nonmoving party] is entitled to a verdict" or whether the evidence is "so one-sided that [the moving party] must prevail as a matter of law." *Id.* at 252. Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

### A.     Failure to Promote

Because Merritt has not provided any direct evidence of discrimination, the court uses a modified version of the framework set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green* to analyze Merritt's ADEA claims. *Godfredson v. Hess & Clark, Inc.*, 173 F.3d 365, 371 (6th Cir. 1999) (citing *McDonnell Douglas*, 411 U.S. 792, 802-03 (1973) (explaining the burden-shifting format) and *O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 310-13 (1996) (modifying the *McDonnell Douglas* framework for ADEA cases)). "Under the modified *McDonnell Douglas* framework, a plaintiff must first establish a prima facie case by showing that (1) he was a member of the protected class, (2) he was subjected to an adverse employment action, (3) he was qualified for the particular position, and (4) the successful applicant was a substantially younger person." *Id.* (citation omitted).

With respect to the selection of Karafa as claims manager, Merritt has satisfied all four elements for a *prima facie* case, as FirstEnergy apparently concedes in its reply brief. Merritt is a member of the protected class, because he was more than 40 years old at the time of the termination. 29 U.S.C. § 631(a). He was not promoted to claims manager. Merritt asserts that he was at least minimally qualified to be claims manager, and FirstEnergy does not dispute that point. Finally, Karafa is 18 years younger than Merritt, which places Karafa outside of the protected class and makes him substantially younger. *See, e.g., Grosjean v. First Energy Corp.*, 349 F.3d 332, 340 (6th Cir. 2003).

Because Merritt has established his *prima facie* case, the burden shifts to FirstEnergy to produce evidence that a legitimate, non-discriminatory reason motivated the employment action. *Barnett v. Dep't of Veterans Affairs*, 153 F.3d 338, 341 (6th Cir. 1998) (citing *McDonnell Douglas*, 411 U.S. at 802). With respect to Merritt's failure-to-promote claim, the legitimate, non-discriminatory reason advanced by FirstEnergy is that because of his experience with the merger integration team, Karafa had

a better sense than any other candidate, including Merritt, of what the new, merged company wanted to do with claims investigation, and how to implement merger- and reorganization-related polices determined by the merger integration team into actual operations. The court finds that this proffered reason is a legitimate, non-discriminatory reason for Karafa's appointment as claims manager.

As FirstEnergy has articulated a legitimate, non-discriminatory reason for appointing Karafa, the burden finally shifts to Merritt to demonstrate that the proffered reason is pretextual. *Id.* at 341 (citations omitted). Merritt can demonstrate pretext by showing that (1) the reason had no basis in fact, (2) the reason did not actually motivate the employment decision, or (3) the reason is insufficient to warrant the employment decision. *Manzer v. Diamond Shamrock Chem. Co.*, 29 F.3d 1078, 1084 (6th Cir.1994) (citation omitted). Merritt does not dispute that Karafa's experience with respect to merger/reorganization transition exceeds his, and does not appear to dispute that such experience was a priority for FirstEnergy. Instead, Merritt claims that Karafa's lack of specific experience with claims investigation made him unqualified for the position of claims manager, and that he was selected simply because he knew upper-level management. Neither of these assertions show that the proffered reason – Karafa's familiarity with merger/reorganization-related policies and goals – had no basis in fact. Those assertions also fail to show that the proffered reason was not the actual motivation for Karafa's appointment or that the reason was insufficient to warrant his appointment. Merritt's assertion that Karafa was hired because of who he knew, not his experience in claims investigation, strengthens FirstEnergy's case. Simply put, Karafa was appointed as claims manager because he had been part of the merger integration team and was one of the people in the newly merged company who knew what upper-level management wanted to achieve post-merger and post-reorganization, despite his lack of experience in claims investigation. Merritt has produced no evidence tending to show that reason to be

pretext. Therefore, the court grants FirstEnergy's motion for summary judgment with respect to Merritt's failure-to-promote ADEA claim.

### B. Reduction-in-Force Termination

For Merritt's other ADEA claim, he must also satisfy the four *McDonnell Douglas* elements to establish a *prima facie* case of age discrimination. However, because the other claim involves a termination as part of a RIF, the *McDonnell Douglas* framework is modified further. "In such a case, the plaintiff is not required to plead the fourth prong of the prima facie framework because in a reduction-of-force situation the plaintiff is not in fact replaced." *Id.* (citation omitted). This is the case because, with a RIF, "[s]preading the former duties of a terminated employee among the remaining employees does not constitute replacement." *Lilley v. BTM Corp.*, 958 F.2d 746, 752 (6th Cir. 1992). Instead, the plaintiff must produce "additional direct, circumstantial, or statistical evidence tending to indicate that the employer singled out the plaintiff for discharge for impermissible reasons" to establish a *prima facie* case. *Barnes v. GenCorp Inc.*, 896 F.2d 1457, 1465 (6th Cir. 1990) (citation omitted). As noted above, Merritt satisfies the first three prongs because he is a member of the protected class, he was terminated, and he was at least minimally qualified to be a claims investigator, the job he held at the time of his termination.

On the modified fourth prong, according to the Sixth Circuit, "evidence that management favored younger workers, tended to fire older workers, or indicated in some manner that older workers were held in disfavor" could serve as the additional evidence required to establish a *prima facie* case where a RIF termination is involved. *LaGrant v. Gulf & W. Mfg. Co.*, 748 F.2d 1087, 1091 (6th Cir. 1984) (citations omitted). A plaintiff could also provide the required additional evidence "by showing that he or she possessed qualifications superior to those of a younger co-worker working in the same

position as the plaintiff" or "show[ing] that the employer made statements indicative of a discriminatory motive." *Barnes*, 896 F.2d at 1466 (citation omitted). Because the accounts of Ewing and Karafa are somewhat inconsistent with respect to what person or persons decided which two claims investigators to retain, what materials were reviewed, and what reasons supported that decision, genuine issues of material fact remain as to precisely how Collins and Chapes were chosen over Merritt. More importantly, the workflow evidence provided by Merritt is evidence that his qualifications to be a claims investigator were superior to both Collins and Chapes' qualifications, at least with respect to processing of claims. While the ability to get along with the manager in small office is important, the inconsistencies between Ewing and Karafa's accounts of the RIF decisions prevents the court from accepting Karafa's explanation of his decision to retain Chapes and Collins as undisputed. Also, because Collins was eight years younger than Merritt, that age difference could indicate discrimination, even if Collins is a member of the protected class as well. *Grosjean*, 349 F.3d at 340. The court finds that Merritt has established a *prima facie* case with respect to his termination.

FirstEnergy's proffered legitimate, non-discriminatory reason for retaining Chapes and Collins over Merrit is that those individuals were selected in legitimate, rational review processes. However, as noted above, the inconsistencies in Ewing and Karafa's accounts of that selection process creates a genuine issue of material fact on the proffered reason. At the least, Merritt's qualifications and the inconsistencies in Ewing and Karafa's accounts constitute genuine issues of material fact on whether FirstEnergy's proffered business judgment was based in fact and whether it actually motivated the decision to retain Chapes and Collins over Merritt. Since genuine issues of material fact remain with respect to Merritt's termination, the court denies FirstEnergy's motion for summary judgment on that claim.

### **III.    Conclusion**

For the foregoing reasons, FirstEnergy's motion for summary judgment [Docket No. 40] is granted in part and denied in part.  The court finds that no genuine issue of material fact remains on Merritt's failure-to-promote claim under the ADEA, and grants FirstEnergy judgment as a matter of law on that claim.  The court finds that genuine issues of material fact remain on Merritt's wrongful termination claim under the ADEA, and denies FirstEnergy judgment as a matter of law on that claim. Trial remains set for Monday, December 3, 2007, at 9:00 a.m., in Courtroom 17B, Carl B. Stokes U.S. Courthouse, 801 West Superior Avenue, Cleveland, Ohio 44113.

IT IS SO ORDERED.

    /s/Ann Aldrich
ANN ALDRICH
UNITED STATES DISTRICT JUDGE

**Dated: May 24, 2007**